QUADRINO & SCHWARTZ, P.C.
666 Old Country Road - Ninth Floor
Garden City, NY 11530
(516) 745-1122
Evan S. Schwartz (ES-8122)
Richard J. Quadrino (RQ-0233)
Harold J. Levy (HL-1579)

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

| | | |
|---|---|---|
| BRENTWOOD PAIN AND REHABILITATION SERVICES, P.C., in behalf of itself and all other similarly situated, | : | Docket No.: 04-CV-04608 (MBM) |
| Plaintiffs, | : | **CLASS ACTION COMPLAINT** |
| - against - | : | |
| THE ROBERT PLAN CORPORATION, THE ROBERT PLAN OF NEW YORK CORPORATION, MATERIAL DAMAGE ADJUSTMENT CORP., EAGLE INSURANCE COMPANY, AIU INSURANCE COMPANY, LION INSURANCE COMPANY, NEWARK INSURANCE COMPANY AMERICAN HOME ASSURANCE COMPANY, AMERICAN INTERNATIONAL INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA, ILLINOIS NATIONAL INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., NEW HAMPSHIRE INSURANCE COMPANY, and NEW HAMPSHIRE INDEMNITY COMPANY, INC., | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

-------------------------------------------------------

The Plaintiff BRENTWOOD PAIN AND REHABILITATION SERVICES, P.C., by its attorneys, Quadrino & Schwartz, P.C., in behalf of itself and all others similarly situated, alleges the following based upon knowledge, as to itself, and upon information and belief as to the Class Members, as follows:

## INTRODUCTION

1.     This action is brought by the named plaintiff, Brentwood Pain and Rehabilitation Services, P.C., in behalf of itself and all other eligible injured persons, and/or their assigns, who properly submitted claims for No-Fault benefits to one or more of the defendants, to redress certain continuing and systemic fraudulent practices of defendants concerning their processing of No-fault insurance claims.

2.     Specifically, defendants The Robert Plan Corporation and Material Damage Adjustment Corp., as third party administrators for the defendant insurance companies, together with those companies, have conspired to, and actually engaged in, a scheme and plan to defraud No-fault claimants, and their medical provider/assignees, by falsifying the dates on which they receive No-fault claims.

3.     By falsifying such dates, defendants Robert Plan and Material Damage Adjustment Corp., in the ordinary course of their business, routinely and customarily, and unlawfully, unilaterally enlarge the time period provided by statute for insurance companies to deny No-fault claims.  The net effect of this practice is to make untimely denials of No-fault insurance claims appear timely.

4.     Failure to accept or deny a No-fault claim within the time set forth by New York statute effectuates a waiver of essentially all defenses otherwise available to the

2

insurance company concerning that claim.  By falsifying the dates on which No-fault denial notices were received or sent, to make untimely denials appear timely, the insurance companies are able to circumvent New York's statutory safeguards for claimants, and fraudulently preserve the insurance companies' defenses to such claims, thereby enhancing the insurance companies' bargaining position to the detriment of the injured claimant and/or his medical provider/assignee.

5.      The fraudulent Denial of Claim Forms bearing false dates indicating that the claims were timely denied when in fact they were untimely, were then mailed or wired to the No-fault claimant, or his medical provider/assignee.  By use of the mail and/or wire services, defendants were able to conceal the fraudulent scheme from the No-fault claimants and their medical provider/assigns, by supplying to them only the fraudulent forms bearing the false dates of receipt, while retaining and concealing the forms bearing the actual date-stamped dates of receipt.

6.      The result is an illegal windfall to the insurance companies at the expense of the No-fault claimants and their assigns.  It is submitted that this fraudulent scheme has netted the insurance companies, and the third party administrators whom they employ and who service them, millions of dollars in reduced claims' costs over the past six years, and has fraudulently and illegally deprived plaintiffs of those same settlement proceeds.

## THE PARTIES

7.      At all times relevant hereto, Plaintiff Brentwood Pain and Rehabilitation Services, P.C. ( "Brentwood"), was a professional corporation organized and existing under the laws of the State of New York, with a principal place of business located in Suffolk County, New York.

8.      Upon information and belief, at all times relevant hereto, defendant The Robert Plan Corporation was a Delaware Corporation licensed to transact business in the State of New York, with a principal place of business located at 999 Stewart Avenue, Bethpage, New York 11714.

9.      Upon information and belief, at all times relevant hereto, defendant The Robert Plan Of New York Corporation (The Robert Plan Corporation, and The Robert Plan of New York Corporation will be referred to collectively herein as the "Robert Plan"), was a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 999 Stewart Avenue, Bethpage, New York 11714.

10.      Upon information and belief, at all times relevant hereto, defendant Material Damage Adjustment Corp., was a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 999 Stewart Avenue, Bethpage, New York 11714.

11.      Upon information and belief, at all times relevant hereto, defendant Material Damage Adjustment Corp.("MDAC"), was a foreign or alien corporation licensed to conduct business in the State of New York, with a principal place of business located at 999 Stewart Avenue, Bethpage, New York 11714.

12.      Upon information and belief, at all times relevant hereto, defendant Eagle Insurance Company, was a New Jersey corporation licensed to conduct business in the State of New York, with a principal place of business located at 999 Stewart Avenue, Bethpage, New York 11714.

13.      Upon information and belief, at all times relevant hereto, defendant Lion

4

Insurance Company, was a New York corporation, with a principal place of business located at 999 Stewart Avenue, Bethpage, New York 11714.

14.     Upon information and belief, at all times relevant hereto, defendant Lion Insurance Company, was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 999 Stewart Avenue, Bethpage, New York 11714.

15.     Upon information and belief, at all times relevant hereto, defendant Newark Insurance Company, was a New York corporation, with a principal place of business located at 999 Stewart Avenue, Bethpage, New York 11714.

16.     Upon information and belief, at all times relevant hereto, defendant Newark Insurance Company, was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 999 Stewart Avenue, Bethpage, New York 11714.

17.     Upon information and belief, at all times relevant hereto, defendant AIU Insurance Company, is a New York corporation with a principal place of business located at 70 Pine Street, New York, New York 10270.

18.     Upon information and belief, at all times relevant hereto, defendant American Home Assurance Company, was a New York corporation, with a principal place of business located at 70 Pine Street, New York, New York 10270.

19.     Upon information and belief, at all times relevant hereto, defendant American Home Assurance Company, was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 70 Pine Street, New York,

New York 10270.

20.     Upon information and belief, at all times relevant hereto, defendant American International Insurance Company, was a New York corporation, with a principal place of business located at 70 Pine Street, New York, New York 10270.

21.     Upon information and belief, at all times relevant hereto, defendant American International Insurance Company, was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 70 Pine Street, New York, New York 10270.

22.     Upon information and belief, at all times relevant hereto, defendant Granite State Insurance Company, was a New York corporation, with a principal place of business located at 70 Pine Street, New York, New York 10270.

23.     Upon information and belief, at all times relevant hereto, defendant Granite State Insurance Company, was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 70 Pine Street, New York, New York 10270.

24.     Upon information and belief, at all times relevant hereto, defendant Birmingham Fire Insurance Company of Pennsylvania, was a New York corporation, with a principal place of business located at 70 Pine Street, New York, New York 10270.

25.     Upon information and belief, at all times relevant hereto, defendant Birmingham Fire Insurance Company of Pennsylvania, was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 70 Pine Street, New York, New York 10270.

26.     Upon information and belief, at all times relevant hereto, defendant Illinois National Insurance Company, was a New York corporation, with a principal place of business located at 70 Pine Street, New York, New York 10270.

27.     Upon information and belief, at all times relevant hereto, defendant Illinois National Insurance Company, was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 70 Pine Street, New York, New York 10270.

28.     Upon information and belief, at all times relevant hereto, defendant National union Fire Insurance Company of Pittsburgh, Pa., was a New York corporation, with a principal place of business located at 70 Pine Street, New York, New York 10270.

29.     Upon information and belief, at all times relevant hereto, defendant National Union Fire Insurance Company of Pittsburgh, Pa., was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 70 Pine Street, New York, New York 10270.

30.     Upon information and belief, at all times relevant hereto, defendant New Hampshire Insurance Company, was a New York corporation, with a principal place of business located at 70 Pine Street, New York, New York 10270.

31.     Upon information and belief, at all times relevant hereto, defendant New Hampshire Insurance Company, was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 70 Pine Street, New York, New York 10270.

32.     Upon information and belief, at all times relevant hereto, defendant New

Hampshire Indemnity Company, Inc., was a New York corporation, with a principal place of business located at 70 Pine Street, New York, New York 10270.

33.     Upon information and belief, at all times relevant hereto, defendant New Hampshire Indemnity Company, Inc. (collectively referred to herein together with the insurance companies identified in Paragraphs "12" through "32," as "Defendant Insurance Companies"), was a foreign corporation licensed to conduct business in the State of New York, with a principal place of business located at 70 Pine Street, New York, New York 10270.

## JURISDICTION AND VENUE

34.     This Court has jurisdiction pursuant to 28 U.S.C. §1331, and 18 U.S.C. §1964 et seq.

35.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§1391(b) and (c), since defendants reside and conduct business in that district, and a substantial portion of the unlawful practices described herein either occurred in, or caused injury in, that district.

## CLASS ALLEGATIONS

**Class Definition**

36.     Brentwood sues in behalf of itself and all other persons similarly situated pursuant to Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3).

37.     The Class represented by Brentwood consists of all eligible claimants and their medical providers/assigns, that have submitted, or will submit, proper No-fault insurance claims through the Robert Plan and/or MDAC, as third party administrators for Defendant Insurance Companies, and who subsequently received from defendants otherwise untimely

8

denials of their claims which appear timely due to defendants' misrepresentations of the dates that claims were received or denied.  By virtue of defendants' conduct, Plaintiffs' Class has been, and will continue to be, injured.

**Numerosity and Impracticability of Joinder**

38.    Plaintiffs' class  ("Plaintiffs' Class") is so numerous that it is impracticable to bring all of its members before the Court.  Brentwood submits that there are hundreds if not thousands of class members.  The actual numbers of class members who have been deceived and defrauded by defendants' practices can only be determined from discovery and review of defendants' records.

**Common Questions of Law and Fact**

39.    The prosecution of the claims of the Plaintiffs' Class require adjudication of  questions of law and fact common to all members of Plaintiffs' Class; whether the defendants have engaged in a pervasive and systemic business practice of issuing denials of No-fault claims based upon the assertion of false and fraudulent dates that the claims were received, which effectively make such denials appear timely rather than untimely.

40.    By routinely and customarily setting forth false dates on which the insurer had received the initial claim forms, the defendant have: (i) deceived the Plaintiffs' Class by making them believe that the denials of their claim were timely, when in fact, they were untimely; (ii) deceiving the Plaintiffs' Class by portraying to them the false impression that the insurance companies retained all valid defenses to their claims, when just the opposite was true; (iii) creating an environment where the Defendant Insurance Companies were in a position to settle such claims for an amount far less than such claims would be settled for were it known by

Plaintiffs' Class that such denials were in fact untimely; and (iv) the common questions of law or fact, therefore, predominate over other questions, if any, that may affect only individual Plaintiffs' Class members.

**Typicality**

41.     The claims of Brentwood are typical of the claims of the members of the Plaintiffs' Class as a whole.  Brentwood, together with all unnamed Plaintiff's Class members, have been and continue to be similarly adversely affected by the pervasive and systemic fraudulent practices complained of herein.

42.     Specifically, the claims and causes of action of Brentwood, like those of the unnamed Plaintiffs' Class members, arise out of the intentional violation by defendants of the New York State Insurance Law requiring No-fault claims to be accepted or denied within thirty (30) days after receipt, and the intentional fraud practiced upon all plaintiffs by defendants falsification of records to appear to comply with such statutes.

**Adequacy of Representation**

43.     Brentwood will fairly and adequately protect and represent the interest of the Plaintiffs' Class.  The interest of Brentwood is coincidental with, and not antagonistic to, those of the Plaintiffs' Class.

44.     Plaintiffs are represented by counsel who are experienced in the competent prosecution of insurance claims, and who are also experienced in the handling of large-scale, complex litigation, including class actions.

45.     Class action treatment in this matter is a superior method for the fair and efficient adjudication of this controversy, in that such treatment will permit a large number of

10

similarly situated individuals and entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the necessity of duplication of evidence, effort and expense that numerous individual actions would require.

46.     The combined interest, experience, and resources of Brentwood and its counsel, to litigate confidently the claims of Plaintiffs' Class, satisfies the requirements of Fed.R.Civ.P. 23(a)(4) .

**Certification is Sought Pursuant to Fed.R.Civ.P. 23(b)(1), and/or 23(b)(2).**

47.     The prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, with a concomitant risk of the establishment of incompatible and conflicting decisions.

48.     Adjudication with respect to individual members of the class could, as a practical matter, be dispositive of the interests of others not parties to the adjudication or substantially impair or impede their ability to protect their interests.

49.     Defendants have refused to act on grounds generally acceptable to the class, thereby making appropriate final injunctive relief to the class as a whole appropriate.

## STATEMENT OF FACTS

**General Principles**

50.     The Comprehensive Motor Vehicle Insurance Reparations Act, commonly known as 'No-Fault,' was enacted to provide a method for quick payment and reimbursement to accident victims for out-of-pocket medical costs.

51.     11 NYCRR § 65.15 provides rules that insurance carriers must follow concerning, first party claims and first party benefits.  The Rule provides that:

Claim practice principles to be followed by all insurers.
(1) Have as your basic goal the prompt and fair payment to all automobile accident victims.
(2) Assist the applicant in the processing of a claim. Do not treat the applicant as an adversary.
(3) Do not demand verification of facts unless there are good reasons to do so. When verification of facts is necessary, it should be done as expeditiously as possible.
(4) Hasten the processing of a claim through the use of a telephone whenever it is possible to do so.
(5) Clearly inform the applicant of the insurer's position regarding any disputed matter.
(6) Respond promptly, when a response is indicated, to all communications from insureds, applicants, attorneys and any other interested persons.
(7) Every insurer shall distribute copies of this regulation to every person directly responsible to it for the handling and settlement of claims for first-party benefits, and every insurer shall satisfy itself that all such personnel are thoroughly conversant with this regulation.

52.     Section 5106 of the New York State Insurance Law requires an insurance company to pay a No-fault claim within thirty (30) days of receipt by it of a No-fault insurance claim form.

53.     One of the rules promulgated by the New York State Insurance Department, in conjunction with the dictates of N.Y. Insurance Law §5106, known as the 'thirty-day rule' provides that a claim must be paid or denied within thirty (30) days of receipt by the insurance company.  Failure to comply with this section and deny a claim within the statutorily prescribed thirty-day period effectuates a waiver that precludes the insurer from subsequently asserting defenses to the claim.

54.     Specifically, among other things, courts have held that an insurer in violation of the thirty-day rule is proscribed from denying a claim based on a statutory exclusion defense, or on the grounds that the medical tests administered were not medically reasonable or

necessary, or based upon a demonstration of lack of "medical necessity" of the services

provided.

**The Instant Action**

55.     Brentwood is a New York State licensed medical provider that, among

other things, treats individuals injured in New York automobile accidents that are covered by

No-fault insurance coverage.

56.     To avoid the necessity, expense and inconvenience of prepayment, the

injured parties typically assign to Brentwood their rights to insurance proceeds for the

procedures, tests and treatments administered.

57.     Brentwood thereafter typically forwards to the claimants' insurance

company, or to the insurance companies' third party administrators, claimants' bills for medical

services rendered.

58.     On information and belief, defendants Robert Plan and MDAC, operate as

third party administrators ("TPAs") to Defendant Insurance Companies concerning the

submission and administration of No-fault claims, and the payment or denial of No-fault claims'

benefits.

59.     In their capacity as TPAs, the Robert Plan and MDAC routinely receive

No-fault insurance claims forms and bills for medical services provided,  submitted by both

individual claimants and their medical providers/assignees.

60.     Upon receipt of such claims, the TPAs date-stamp the documents

received.

61.     Once the No-fault claim forms are received and date-stamped by the

TPAs, the insurer's time to pay or deny the claim in accordance with New York State's 'thirty-day rule' begins to run.

62.     To timely deny a claim, the TPAs, on behalf of the defendant insurance companies, must forward to the claimant a New York Motor Vehicle No-Fault Insurance Law Denial of Claim Form (NYS Form NF-10) (the "Denial Of Claim Form"), within the thirty (30) days mandated by law.

63.     The Denial Of Claim Form identifies, among other things, the following:

> a) That the claim is being denied;
> b) the reason for the denial;
> c) the **date that the claim was received by the insurer**;

and

> d) the **date that the claim is being denied**.

64.      The Denial Of Claim Form is the only document available to a claimant, or the claimant's medical provider/assignee, that sets forth the date that the claim was received by the insurer, and the date of the denial, and therefore, it is the only document available to the plaintiffs from which the plaintiffs can determine whether the claim was timely denied.  The original claim submission forms and accompanying documents which were date-stamped upon receipt, are retained by defendants and not available to plaintiffs.

**Examples of Predicate Acts**

65.     On August 22, 2002, East Coast Medical Care, PC, as assignee of claimant Victor Paulino, caused to be forwarded to Eagle Insurance Company, a bill for payment for medical services rendered together with a cover letter.  The documents were received and date-stamped by MDAC on August 23, 2002.  Eagle Insurance Company, by their agent MDAC, subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated September 25, 2002

– thirty-three (33) days later.  However, the NF-10 form states that the "Date [the claim was] Received by Insurer," was "08-27-2002," making the claim fraudulently appear to have been timely denied within the statutory thirty-day period when in fact it was untimely denied in violation of N.Y. Ins. Law §5106.

66.     On January 14, 2003, Adam Marigliano, LMT, as assignee of claimant Osmin Velasquez, caused to be forwarded to AIU Insurance Company, a bill for payment for medical services rendered and a cover letter.  The documents were received and date-stamped by the Robert Plan on January 15, 2003.  AIU Insurance Company, by their agent MDAC, subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated February 20, 2003 – thirty-six (36) days later.  However, the NF-10 form states that the "Date [the claim was] Received by Insurer," was "01-24-2003," making the claim fraudulently appear to have been timely denied within the statutory thirty-day period when in fact it was untimely denied in violation of N.Y. Ins. Law §5106.

67.     On December 6, 2002, CPT Medical Services, PC, as assignee of claimant Ana Mercedes, caused to be forwarded to AIU Insurance Company, a bill for payment for medical services rendered and a cover letter.  The documents were received and date-stamped by the Robert Plan on December 9, 2002.  AIU Insurance Company, by their agent MDAC, subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated January 10, 2003 – thirty-two (32) days later.  However, the NF-10 form states that the "Date [the claim was] Received by Insurer," was "12-16-2002," making the claim fraudulently appear to have been timely denied within the statutory thirty-day period when in fact it was untimely denied in violation of N.Y. Ins. Law §5106.

68.     On August 7, 2002, CKC Chiropractic, PC, as assignee of claimant David Easmine, caused to be forwarded to AIU Insurance Company, a bill for payment for medical services provided and a cover letter.  The documents were received and date-stamped by the Robert Plan August 8, 2002.  AIU Insurance Company, by their agent MDAC, subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated September 12, 2002 – thirty-six (36) days later.  However, the NF-10 form states that the "Date [the claim was] Received by Insurer," was "08-13-2002," making the claim fraudulently appear to have been timely denied within the statutory thirty-day period when in fact it was untimely denied in violation of N.Y. Ins. Law §5106.

69.     On August 7, 2002, CKC Chiropractic, PC, as assignee of claimant Nigel Martin, caused to be forwarded to AIU Insurance Company, a bill for payment for medical services provided and a cover letter.  The documents were received and date-stamped by the Robert Plan on August 8, 2002.  AIU Insurance Company, by their agent MDAC, subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated September 12, 2002 – thirty-six (36) days later.  However, the NF-10 form states that the "Date [the claim was] Received by Insurer," was "08-13-2002," making the claim fraudulently appear to have been timely denied within the statutory thirty-day period when in fact it was untimely denied in violation of N.Y. Ins. Law §5106.

70.     On August 7, 2002, CKC Chiropractic, PC, as assignee of claimant Raymond Keci, caused to be forwarded to AIU Insurance Company, a bill for payment for medical services provided and a cover letter.  The documents were received and date stamped by the Robert Plan on August 8, 2002.  AIU Insurance Company, by their agent MDAC,

subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated September 12, 2002 – thirty-six (36) days later.  However, the NF-10 form states that the "Date [the claim was] Received by Insurer," was "08-13-2002," making the claim fraudulently appear to have been timely denied within the statutory thirty-day period when in fact it was untimely denied in violation of N.Y. Ins. Law §5106.

71.     On October 1, 2002, Astoria Quality Medical Supplies, as assignee of claimant Earnest Gordon, caused to be forwarded to AIU Insurance Company, a bill for payment for medical services provided and a cover letter.  The documents were received and date-stamped by MDAC on October 2, 2002.  AIU Insurance Company, by their agent MDAC, subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated November 6, 2002 – thirty-six (36) days later.  However, the NF-10 form states that the "Date [the claim was] Received by Insurer," was "10-07-2002," making the claim fraudulently appear to have been timely denied within the statutory thirty-day period when in fact it was untimely denied in violation of N.Y. Ins. Law §5106.

72.     On March 28, 2003, Acupuncture Art, PC, as assignee of claimant Boris Yushuvayev, caused to be forwarded to AIU Insurance Company, a bill for payment for medical services provided and a cover letter.  The documents were received and date-stamped by MDAC on March 31, 2003.  AIU Insurance Company, by their agent MDAC, subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated May 5, 2003 – thirty-six (36) days later. However, the NF-10 form states that the "Date [the claim was] Received by Insurer," was "04-03-2002," making the claim fraudulently appear to have been timely denied within the statutory thirty-day period when in fact it was untimely denied in violation of N.Y. Ins. Law §5106.

17

73.    On November 19, 2002, I.K. Medical, PC, as assignee of claimant Amnon

Pinhasov, caused to be forwarded to AIU Insurance Company, a bill for payment for medical

services provided and a cover letter.  The documents were received and date-stamped by the

Robert Plan on November 20, 2002.  AIU Insurance Company, by their agent MDAC,

subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated January 2, 2003 –

forty-three (43) days later.  However, the NF-10 form states that the "Date [the claim was]

Received by Insurer," was "12-17-2002," making the claim fraudulently appear to have been

timely denied within the statutory thirty-day period when in fact it was untimely denied in

violation of N.Y. Ins. Law §5106.

74.    On or about December 20, 2001, Brentwood, as assignee of claimant

Oscar Martinez, caused to be forwarded to Eagle Insurance Company, a bill for payment for

medical services provided and a cover letter.  The documents were received and date-stamped by

the Robert Plan on December 26, 2001.  Eagle Insurance Company, by their agent MDAC,

subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated January 28, 2002 –

thirty-three (33) days later.  However, the NF-10 form states that the "Date [the claim was]

Received by Insurer," was "01-01-2002," making the claim fraudulently appear to have been

timely denied within the statutory thirty-day period when in fact it was untimely denied in

violation of N.Y. Ins. Law §5106.

75.    On or about October 29, 2001, Brentwood, as assignee of claimant Oscar

Martinez, caused to be forwarded to Eagle Insurance Company, a bill for payment for medical

services provided and a cover letter.  The documents were received and date-stamped by the

Robert Plan on October 31, 2001.  Eagle Insurance Company, by their agent MDAC,

18

subsequently denied the claim.  The Denial of Claim Form (NF-10) is dated December 6, 2001 –

thirty-six (36) days later.  However, the NF-10 form states that the "Date [the claim was]

Received by Insurer," was "11-07-2001," making the claim fraudulently appear to have been

timely denied within the statutory thirty-day period when in fact it was untimely denied in

violation of N.Y. Ins. Law §5106.

        76.    On or about July 9, 2001, Brentwood, as assignee of claimant Oscar

Martinez, caused to be forwarded to Eagle Insurance Company, a bill for payment for medical

services provided and a cover letter.  The documents were received and date-stamped by the

Robert Plan on July 10, 2001.  Eagle Insurance Company, by their agent MDAC, subsequently

denied the claim.  The Denial of Claim Form (NF-10) is dated August 10, 2001 – thirty-one (31)

days later.  However, the NF-10 form states that the "Date [the claim was] Received by Insurer,"

was "07-13-2001," making the claim fraudulently appear to have been timely denied within the

statutory thirty-day period when in fact it was untimely denied in violation of N.Y. Ins. Law

§5106.

        77.    It is believed that all of the above claims were forwarded to defendants via

the United States mail and/or faxed via interstate wire services, and that all fraudulent denials of

claims were forwarded by defendants to claimants or their assigns through the United States mail

or fax via interstate wire services.

## COUNT  I
### (Federal RICO Violation Against The Robert Plan)

        78.    Plaintiffs incorporate by reference Paragraphs "1" through "77" above.

        79.    At all relevant times, the Robert Plan was a "Person" within the meaning

of 18 U.S.C. §§1961(3) and 1964(c).

80.     At all relevant times, the Robert Plan was an association for the purpose of defrauding the plaintiffs, and an "enterprise" within the meaning of 18 U.S.C. §1961(4).

81.     At all relevant times, this enterprise was engaged in and its activities affected interstate and foreign commerce, within the meaning of 18 U.S.C. §1962(c).

82.     At all relevant times, the Robert Plan conducted or participated, directly or indirectly, in a "pattern of racketeering activity" within the meaning of  18 U.S.C. §1961(5) in violation of 18 U.S.C. §1962(c).

83.     Specifically, at all relevant times, the Robert Plan engaged in "racketeering activity" within the meaning of 18 U.S.C. §1961(1) by engaging in the acts set forth above.

84.     The acts set forth above constitute a violation of, among other things, 18 U.S.C. §1341 (mail fraud), and/or 18 U.S.C. §1343 (wire fraud).

85.     The Robert  Plan committed two or more of these acts of racketeering activity.

86.     The acts of racketeering activity set forth above constitute a "pattern of racketeering activity" within the meaning of  18 U.S.C. §1965(5).

87.     The acts alleged were related to each other by virtue of the common participants, common victims, a common method of commission and the common purpose and common result of defrauding Brentwood, and all other unnamed plaintiffs similarly situated and comprising Plaintiffs' Class.

88.     Upon information and belief, the above fraudulent scheme has continued for in excess of five (5) years, and, absent Court intervention, threatens to continue into the

future.

89.     As a result of the above violations of  18 U.S.C. §1962(c) by the Robert

Plan, Plaintiffs' Class has been injured in an amount to be determined by the trier of fact after

trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

90.     Pursuant to 18 U.S.C. §1964(c), Plaintiffs' Class is entitled to recover

treble damages, plus costs and attorneys' fees.

## COUNT II
### (Federal RICO Violation Against The Robert Plan,
### Eagle Insurance Company, and AIU Insurance Company)

91.     Plaintiffs incorporate by reference Paragraphs "1" through "90" above.

92.     At all relevant times, the Robert Plan was a "Person" within the meaning

of 18 U.S.C. §§1961(3) and 1964(c).

93.     At all relevant times, Eagle Insurance Company was a "Person" within the

meaning of 18 U.S.C. §§1961(3) and 1964(c).

94.     At all relevant times, AIU Insurance Company was a "Person" within the

meaning of 18 U.S.C. §§1961(3) and 1964(c).

95.     At all relevant times, the Robert Plan, Eagle Insurance Company, and/or

AIU Insurance Company formed an association-in-fact for the purpose of defrauding the

Plaintiffs' Class.

96.     This association-in-fact was an enterprise within the meaning of 18 U.S.C.

§1961(4).

97.     At all relevant times, this enterprise was engaged in and its activities

affected interstate and foreign commerce, within the meaning of 18 U.S.C. §1962(c).

98.     At all relevant times, the Robert Plan, Eagle Insurance Company, and/or AIU Insurance Company conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5) in violation of 18 U.S.C. §1962(c).

99.     Specifically, at all relevant times, the Robert Plan, Eagle Insurance Company, and/or AIU Insurance Company, engaged in "racketeering activity" within the meaning of 18 U.S.C. §1961(1) by engaging in the acts set forth above.

100.    The acts set forth above constitute a violation of, among other things, 18 U.S.C. §1341 (mail fraud); and/or 18 U.S.C. §1343 (wire fraud).

101.    The Robert Plan, Eagle Insurance Company, and/or AIU Insurance Company, or each of them, committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

102.    The acts of racketeering activity set forth above constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1965(5).

103.    The acts alleged were related to each other by virtue of the common participants, common victims, a common method of commission and the common purpose and common result of defrauding Brentwood, and all other members of Plaintiffs' Class similarly situated.

104.    Upon information and belief, the above fraudulent scheme has continued for in excess of five (5) years, and, absent Court intervention, threatens to continue into the future.

105.    As a result of the above defendants' violation of 18 U.S.C. §1962(c),

Plaintiffs' Class has been damaged in the amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

106.     Pursuant to 18 U.S.C. §1964(c), Plaintiffs' Class is entitled to recover treble damages plus costs and attorneys' fees.

<u>COUNT III</u>
**(Federal RICO Violation Against MDAC)**

107.     Plaintiffs incorporate by reference Paragraphs "1" through "106" above.

108.     At all relevant times, MDAC was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

109.     At all relevant times, MDAC was an association for the purpose of defrauding the plaintiffs, and an "enterprise" within the meaning of 18 U.S.C. §1961(4).

110.     At all relevant times, this enterprise was engaged in and its activities affected interstate and foreign commerce, within the meaning of 18 U.S.C. §1962(c).

111.     At all relevant times, MDAC conducted or participated, directly or indirectly, in a "pattern of racketeering activity" within the meaning of  18 U.S.C. §1961(5) in violation of 18 U.S.C. §1962(c).

112.     Specifically, at all relevant times, MDAC engaged in "racketeering activity" within the meaning of 18 U.S.C. §1961(1) by engaging in the acts set forth above.

113.     The acts set forth above constitute a violation of, among other things, 18 U.S.C. §1341 (mail fraud), and/or 18 U.S.C. §1343 (wire fraud).

114.     MDAC committed two or more of these acts of racketeering activity.

115.     The acts of racketeering activity set forth above constitute a "pattern of racketeering activity" within the meaning of  18 U.S.C. §1965(5).

23

116.    The acts alleged were related to each other by virtue of the common participants, common victims, a common method of commission and the common purpose and common result of defrauding Brentwood, and all other unnamed plaintiffs similarly situated and comprising Plaintiffs' Class.

117.    Upon information and belief, the above fraudulent scheme has continued for in excess of five (5) years, and, absent Court intervention, threatens to continue into the future.

118.    As a result of the above violations of 18 U.S.C. §1962(c) by MDAC, Plaintiffs' Class has been injured in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

119.    Pursuant to 18 U.S.C. §1964(c), Plaintiffs' Class is entitled to recover treble damages, plus costs and attorneys' fees.

**COUNT IV**
**(Federal RICO Violation Against MDAC,**
**Eagle Insurance Company, and AIU Insurance Company)**

120.    Plaintiffs incorporate by reference Paragraphs "1" through "119" above.

121.    At all relevant times, MDAC was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

122.    At all relevant times, Eagle Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

123.    At all relevant times, AIU Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

124.    At all relevant times, MDAC, Eagle Insurance Company, and/or AIU

24

Insurance Company formed an association-in-fact for the purpose of defrauding the Plaintiffs'
Class.

125.    This association-in-fact was an enterprise within the meaning of 18 U.S.C.
§1961(4).

126.    At all relevant times, this enterprise was engaged in and its activities
affected interstate and foreign commerce, within the meaning of 18 U.S.C. §1962(c).

127.    At all relevant times, MDAC, Eagle Insurance Company, and/or  AIU
Insurance Company conducted or participated, directly or indirectly, in the conduct of the
enterprise's affairs through a "pattern of racketeering activity" within the meaning of  18 U.S.C.
§1961(5) in violation of 18 U.S.C. §1962(c).

128.    Specifically, at all relevant times, MDAC, Eagle Insurance Company,
and/or AIU Insurance Company, engaged in "racketeering activity" within the meaning of 18
U.S.C. §1961(1) by engaging in the acts set forth above.

129.    The acts set forth above constitute a violation of, among other things, 18
U.S.C. §1341 (mail fraud); and/or 18 U.S.C. §1343 (wire fraud).

130.    MDAC, Eagle Insurance Company, and/or AIU Insurance Company, or
each of them, committed and/or aided and abetted the commission of two or more of these acts
of racketeering activity.

131.    The acts of racketeering activity set forth above constitute a "pattern of
racketeering activity" within the meaning of  18 U.S.C. §1965(5).

132.    The acts alleged were related to each other by virtue of the common
participants, common victims, a common method of commission and the common purpose and

common result of defrauding Brentwood, and all other members of Plaintiffs' Class similarly situated.

133.    Upon information and belief, the above fraudulent scheme has continued for in excess of five (5) years, and, absent Court intervention, threatens to continue into the future.

134.    As a result of the above defendants' violation of 18 U.S.C. §1962(c), Plaintiffs' Class has been damaged in the amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

135.    Pursuant to 18 U.S.C. §1964(c), Plaintiffs' Class is entitled to recover treble damages plus costs and attorneys' fees.

## COUNT V
### (Federal RICO Violation Against the Robert Plan, MDAC, Eagle Insurance Company, and AIU Insurance Company)

136.    Plaintiffs incorporate by reference Paragraphs "1" through "135" above.

137.    At all relevant times, the Robert Plan was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

138.    At all relevant times, MDAC was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

139.    At all relevant times, Eagle Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

140.    At all relevant times, AIU Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

141.    At all relevant times, the Robert Plan, MDAC, Eagle Insurance Company,

26

and/or  AIU Insurance Company formed an association-in-fact for the purpose of defrauding the Plaintiffs' Class.

142.   This association-in-fact was an enterprise within the meaning of 18 U.S.C. §1961(4).

143.   At all relevant times, this enterprise was engaged in and its activities affected interstate and foreign commerce, within the meaning of 18 U.S.C. §1962(c).

144.   At all relevant times, the Robert Plan, MDAC, Eagle Insurance Company, and/or  AIU Insurance Company conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of  18 U.S.C. §1961(5) in violation of 18 U.S.C. §1962(c).

145.   Specifically, at all relevant times, the Robert Plan, MDAC, Eagle Insurance Company, and/or AIU Insurance Company, engaged in "racketeering activity" within the meaning of 18 U.S.C. §1961(1) by engaging in the acts set forth above.

146.   The acts set forth above constitute a violation of, among other things, 18 U.S.C. §1341 (mail fraud); and/or 18 U.S.C. §1343 (wire fraud).

147.   The Robert Plan, MDAC, Eagle Insurance Company, and/or AIU Insurance Company, or each of them, committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

148.   The acts of racketeering activity set forth above constitute a "pattern of racketeering activity" within the meaning of  18 U.S.C. §1965(5).

149.   The acts alleged were related to each other by virtue of the common participants, common victims, a common method of commission and the common purpose and

common result of defrauding Brentwood, and all other members of Plaintiffs' Class similarly situated.

150.    Upon information and belief, the above fraudulent scheme has continued for in excess of five (5) years, and, absent Court intervention, threatens to continue into the future.

151.    As a result of the above defendants' violation of 18 U.S.C. §1962(c), Plaintiffs' Class has been damaged in the amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

152.    Pursuant to 18 U.S.C. §1964(c), Plaintiffs' Class is entitled to recover treble damages plus costs and attorneys' fees.

## COUNT VI
### (Federal RICO Violation Against All Defendants)

153.    Plaintiffs incorporate by reference Paragraphs "1" through "152" above.

154.    At all relevant times, the Robert Plan was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

155.    At all relevant times, MDAC was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

156.    At all relevant times, Eagle Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

157.    At all relevant times, AIU Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

158.    At all relevant times, Lion Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

28

159. At all relevant times, Newark Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

160. At all relevant times, American Home Assurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

161. At all relevant times, American International Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

162. At all relevant times, Granite State Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

163. At all relevant times, Birmingham Fire Insurance Company of Pennsylvania was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

164. At all relevant times, Illinois National Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

165. At all relevant times, National Union Fire Insurance Company of Pittsburgh, Pa. was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

166. At all relevant times, New Hampshire Insurance Company was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

167. At all relevant times, New Hampshire Indemnity Company, Inc. was a "Person" within the meaning of 18 U.S.C. §§1961(3) and 1964(c).

168. At all relevant times, the above named defendants formed an association-in-fact for the purpose of defrauding the Plaintiffs' Class.

169. This association-in-fact was an enterprise within the meaning of 18 U.S.C. §1961(4).

170.    At all relevant times, this enterprise was engaged in and its activities affected interstate and foreign commerce, within the meaning of 18 U.S.C. §1962(c).

171.    At all relevant times, the above named defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of  18 U.S.C. §1961(5) in violation of 18 U.S.C. §1962(c).

172.    Specifically, at all relevant times, the above named defendants engaged in "racketeering activity" within the meaning of 18 U.S.C. §1961(1) by engaging in the acts set forth above, or unnamed acts similar or identical to those set forth above.

173.    The acts and unnamed acts set forth above, constitute a violation of, among other things, 18 U.S.C. §1341 (mail fraud); and/or 18 U.S.C. §1343 (wire fraud).

174.    The above named defendants, or each of them, committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

175.    The acts of racketeering activity set forth above constitute a "pattern of racketeering activity" within the meaning of  18 U.S.C. §1965(5).

176.    The acts alleged were related to each other by virtue of the common participants, common victims, a common method of commission and the common purpose and common result of defrauding Brentwood, and all other members of Plaintiffs' Class similarly situated.

177.    Upon information and belief, the above fraudulent scheme has continued for in excess of five (5) years, and, absent Court intervention, threatens to continue into the future.

178.    As a result of the above defendants' violation of 18 U.S.C. §1962(c),

Plaintiffs' Class has been damaged in the amount to be determined by the trier of fact after trial,

but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

179.    Pursuant to 18 U.S.C. §1964(c), Plaintiffs' Class is entitled to recover

treble damages plus costs and attorneys' fees.

### COUNT VII
**(RICO Conspiracy Against All Defendants)**

180.    Plaintiffs incorporate by reference Paragraphs "1" through "179" above.

181.    At all relevant times, each of the named defendants was a "Person" within

the meaning of 18 U.S.C. §§1961(3) and 1964(c).

182.    At all relevant times, the named defendants, formed an association-in-fact

for the purpose of defrauding the Plaintiffs.

183.    This association-in-fact was an enterprise within the meaning of 18 U.S.C.

§1961(4).

184.    At all relevant times, this enterprise was engaged in and its activities

affected interstate and foreign commerce, within the meaning of 18 U.S.C. §1962(c).

185.    As set forth in Counts "I" through "VI" above, the Robert Plan, and each

of the other named defendants/conspirators associated with this enterprise conducted or

participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of

racketeering activity" within the meaning of 18 U.S.C. §1961(5), in violation of 18 U.S.C.

§1962(c).

186.    At all times, the Robert Plan and the other named defendants/conspirators

each were associated with the enterprise and agreed and conspired to violate 18 U.S.C. §1962(c),

that is, agreed to conduct and participate, directly or indirectly, in the conduct of the affairs of the enterprise through a "pattern of racketeering activity," in violation of 18 U.S.C. §1962(d).

187.    The Robert Plan and the other named defendants/conspirators committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the object thereof, including but not limited to, the acts set forth above.

188.    As a result of the Robert Plan and the other named defendants/conspirators' violations of 18 U.S.C. §1962(d), Plaintiffs' Class has been damaged in the amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

189.    Pursuant to 18 U.S.C. §1964(d), Plaintiffs' Class is entitled to recover treble damages plus costs and attorneys' fees.

## COUNT VIII
### (Against All Defendants For Common Law Fraud)

190.    Plaintiffs incorporate by reference Paragraphs "1" through "189" above.

191.    As set forth above, the false "Date [the claim was] Received by Insurer," set forth by defendants on their Denial of Claims Forms, constituted false statements of fact.

192.    The above statements were known by defendants to be false.

193.    Defendants intended that the above false statements to be relied upon by Plaintiffs' Class.

194.    The above false statements were relied upon by Plaintiffs' Class.

195.    Plaintiffs' Class's reliance was reasonable.

196.    Plaintiffs' Class was damaged by its reliance on the intentionally false statements made by defendants.

32

197.     As a result of the foregoing, Plaintiffs' Class has been damaged in the amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

198.     Due to the fact that the injury was intentional, wanton and willful, and was aimed at the public at large, Plaintiffs' Class is entitled to recover punitive damages in an amount to be determined by the trier of fact after trial, but at least the sum of FIFTY MILLION ($50,000,000.00) DOLLARS, plus costs and attorneys' fees.

### COUNT IX
### (Against Defendant Insurance Companies For Breach Of Contract)

199.     Plaintiffs incorporate by reference Paragraphs "1" through "198" above.

200.     Plaintiffs' Class consists of parties, beneficiaries and assigns to the various insurance contracts at issue in this litigation and issued by Defendant Insurance Companies.

201.     Pursuant to the terms and conditions of those policies, Defendant Insurance Companies agreed, inter alia, to pay claims in accordance with New York's No-fault insurance laws.

202.     Upon information and belief, Plaintiff's Class consists of insureds and/or covered persons (as that term is defined under the various policies), or their medical provider/assigns.

203.     Upon information and belief, Plaintiffs' Class remitted timely bills concerning medical treatments and services, to Defendant Insurance Companies.

204.     Upon information and belief, the bills were timely received by Defendant Insurance Companies.

205.    Upon information and belief, the medical treatments and services provided were medically necessary.

206.    Upon information and belief, the medical treatments and services provided were properly performed.

207.    Upon information and belief, the charges for the medical treatments and services provided were fair and reasonable.

208.    Defendant Insurance Companies have breached the various terms and conditions of the various policies issued to, or claimed against, by the Plaintiffs' Class, by failing to pay Plaintiffs' Class pursuant to the bills submitted.

209.    Due to the foregoing, Plaintiffs' Class has been damaged in the amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS, plus attorneys' fees and interest pursuant to 11 NYCRR §§65.17(b)(6)(v), 6517(b)(ii), and 65.15(h)(1).

## <u>COUNT X</u>
### (Against All Defendants Pursuant to General Business Law §349)

210.    Plaintiffs incorporate by reference Paragraphs "1" through "209" above.

211.    Upon information and belief, each denial of payment by the defendants was part of a deceptive scheme or practice to deceive Plaintiffs' Class and the public at large.

212.    Defendants, by representing to the public that their medical claims would be reimbursed, while knowing that they would subsequently erect improper barriers to repayment, constitutes a breach of New York's General Business Law §349, which prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

34

213.     Each refusal by defendants to pay Plaintiffs' Class member's bills constitutes a separate violation of New York General Business Law §349.

214.     The allegations at issue here are not unique to the dispute between Plaintiffs' Class and defendants, but rather have a broader impact on consumers at large.

215.     Defendants' conduct imposes additional societal costs and frustrates the objective of New York's no fault insurance scheme to institute an inexpensive, efficient method of compensating accident victims and thereby harms the public at large.

216.     Upon information and belief, Plaintiffs' Class has been damaged by the actions of defendants in that they have denied payment/reimbursement for medically necessary, standard and reasonable medical procedures.

217.     Pursuant to GBL §349, Plaintiffs' Class is thus entitled to recover, as to each bill, triple the amount of the sums outstanding and due as determined at trial, plus interest and attorney fees.

## <u>COUNT XI</u>
### (Against All Defendants For Unjust Enrichment)

218.     Plaintiffs incorporate by reference Paragraphs "1" through "217" above.

219.     By misstating the dates that claims were received, and providing the false impression that all defenses concerning those claims had been preserved, defendants were able to settle claims for less than they would otherwise have been able.

220.     Defendants have therefore been unjustly enriched by an amount measured by the difference between what defendants actually paid in claims, what defendants would have paid in claims had Plaintiffs' Class been aware that defendants' denials of their claims were untimely.

35

221.    Due to the foregoing, Plaintiffs' Class is entitled to damages in the amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS, plus attorneys' fees and interest pursuant to 11 NYCRR §§65.17(b)(6)(v), 6517(b)(ii), and 65.15(h)(1).

## DEMAND FOR JURY TRIAL

222.    Plaintiffs demand a trial by jury on all issue so triable.

**WHEREFORE,** Plaintiff Brentwood Pain and Rehabilitation Services, P.C., on behalf of itself and all member of Plaintiffs' Class, pray for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and that Brentwood is a proper representative of the Class;

B.    Awarding Plaintiffs Class temporary and permanent injunctive relief barring defendants, or any of them, or their officers, directors, employees, agents or assigns, or any person or entity in their behalf or at their direction or instruction, from continuing the false and fraudulent practices set forth herein;

C.    On Count I of the Complaint, against defendant The Robert Plan Corporation and/or The Robert Plan Corporation of New York, in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS, together with treble damages, costs and attorneys' fees;

D.    On Count II of the Complaint, against defendants The Robert Plan Corporation and/or The Robert Plan Corporation of New York, Eagle Insurance Company and AIU Insurance Company, in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS, together with treble damages,

costs and attorneys' fees;

E.      On Count III of the Complaint, against defendant Material Damage Adjustment Corp., in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS, together with treble damages, costs and attorneys' fees;

F.      On Count IV of the Complaint, against defendants Material Damage Adjustment Corp., Eagle Insurance Company and AIU Insurance Company, in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS, together with treble damages, costs and attorneys' fees;

G.      On Count V of the Complaint, against defendants The Robert Plan Corporation and/or The Robert Plan Corporation of New York, Material Damage Adjustment Corp., Eagle Insurance Company and AIU Insurance Company, in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS, together with treble damages, costs and attorneys' fees;

H.      On Count VI of the Complaint, against all defendants, in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS, together with treble damages, costs and attorneys' fees;

I.      On Count VII of the Complaint, against all defendants, in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION ($5,000,000.00) DOLLARS, together with treble damages, costs and attorneys' fees;

J.      On Count VIII of the Complaint, against all defendants, in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE MILLION

($5,000,000.00) DOLLARS, together with punitive damages in the sum of not less than FIFTY

MILLION ($50,000,000.00) DOLLARS, costs and attorneys' fees;

K.      On Count IX of the Complaint, against Defendant Insurance Companies,

in an amount to be determined by the trier of fact after trial, but not less than the sum of FIVE

MILLION ($5,000,000.00) DOLLARS, plus attorneys' fees and interest pursuant to 11 NYCRR

§§65.17(b)(6)(v), 6517(b)(ii), and 65.15(h)(1);

L.      On Count X of the Complaint, against all defendants, in an amount to be

determined by the trier of fact after trial, but not less than the sum of FIVE MILLION

($5,000,000.00) DOLLARS, together with treble damages thereon, and reasonable costs and

attorneys' fees;

M.      On Count XI of the Complaint, against all defendants in an amount to be

determined by the trier of fact after trial, but not less than the sum of FIVE MILLION

($5,000,000.00) DOLLARS, plus attorneys' fees and interest pursuant to 11 NYCRR

§§65.17(b)(6)(v), 6517(b)(ii), and 65.15(h)(1); and

N.      Awarding Plaintiffs' Class costs, disbursements and such other and further

relief as the Court deems just and proper.

Dated: Garden City, New York
      June 18, 2004

By: _____
    Evan S. Schwartz (ES-8122)
    Richard J. Quadrino (RQ-0233)
    Harold J. Levy (HL-1579)
    Quadrino & Schwartz, P.C.
    666 Old Country Road - Ninth Floor
    Garden City, New York 11530
    (516) 745-1122

    Attorneys for Plaintiff
    and the proposed Class

G:\Robert Plan Class Action\Class Action.cpt.3.wpd